# EXHIBIT A

**HCDistrictclerk.com**     GAFOOR, BEBI (INDIVIDUALLU AND AS PERSONAL     11/26/2025
REPRESE vs. AIRBNB INC
Cause: 202589752          CDI: 7     Court: 129

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----|--------------|-----------------|---------------|
| 11/25/2025 | ORIGINAL PETITION | | | 0 | | KOELSCH, PHILIP JULIAN | GAFOOR, BEBI (INDIVIDUALLU AND AS PERSONAL REPRESENTATIVE OF THE |
| 11/25/2025 | ORIGINAL PETITION | | | 0 | | KOELSCH, PHILIP JULIAN | GAFOOR, IMTIAZ |

11/25/2025 1:47 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 108457474
By: Bernitta Barrett
Filed: 11/25/2025 1:47 PM

CAUSE NO. _____

| | | |
|---|---|---|
| **BEBI GAFOOR, Individually and as Personal Representative of the Estate of Mohamad Mustafa Gafoor, and IMTIAZ GAFOOR;** | § § § § | **IN THE DISTRICT COURT OF** |
| *Plaintiff*s | § § | |
| **V.** | § § | |
| **AIRBNB, INC.; AIRBNB RPG, INC.; AIRBNB PAYMENTS, INC.; SAMANTHA PATEL; GEETHA MURICKAN; AND FELIX THOMAS;** | § § § § § § § § | **HARRIS COUNTY, TEXAS** |
| *Defendants* | § § | **_____ JUDICIAL DISTRICT** |

<u>**PLAINTIFFS' ORIGINAL PETITION**</u>

PLAINTIFFS **BEBI GAFOOR**, *Individually and as Personal Representative of the Estate of Mohamad Mustafa Gafoor,* and **IMTIAZ GAFOOR** (hereinafter collectively referred to as "Plaintiffs"), file this Original Petition complaining of DEFENDANTS **AIRBNB, INC**.; **AIRBNB RPG, INC.; AIRBNB PAYMENTS, INC.; SAMANTHA PATEL; GEETHA MURICKAN;** and **FELIX THOMAS** (hereinafter collectively referred to as "Defendants"). For cause of action, Plaintiffs respectfully show the Court as follows:

## I.
## <u>SUMMARY OF THE ACTION</u>

1.1    Plaintiffs' claims all relate to the Gafoor family's exposure to toxic mold during their July–August 2024 stay at 1711 Old Spanish Trail, Apt. No. 203; Houston, TX 77054 (hereinafter "**the Unit**" or the "**Subject Unit**") booked on Airbnb. At the time of their exposure, the late Mohamad Mustafa Gafoor was receiving cancer treatment at nearby MD Anderson. Thus,

Unofficial Copy Office of Marilyn Burgess District Clerk

he was severely immunocompromised and extremely susceptible to a mold–induced infection. On August 16, 2024, Mr. Gafoor was admitted to MD Anderson to treat fungal sinusitis, a mold–induced infection. Thereafter, Mr. Gafoor's health took a tragic turn for the worse. Approximately one (1) month after his admission, Mr. Gafoor passed away. Significantly, Mr. Gafoor's death certificate lists lymphoma ***and*** a fungal infection as his cause of death. *See* Figures 1–3.

He presented to MD Anderson and underwent a bone marrow biopsy on 7/11/2024 showing **93% blasts, CD19 negative and CD22 positive at 80% by flow cytometry, complex cytogenetics, and mutations of JAK1 and TP53.** He was enrolled **on protocol 2017–1003 of UCART22** and he received lymphoid depletion followed by the infusion on 7/25/2024. Recently, the patient has been complaining of worsening headache and left eye pain. CT scan of the head performed on 8/12/2024 did not show any abnormalities, in particular no sinusitis.
He presented on 8/16/2024 again to ACCC with worsening symptoms and had an MRI showing acute invasive fungal sinusitis with involvement of the left medial orbit and retroantral space. He was admitted for further management.

8/20/24: Afebrile, VSS. Tissue culture left turbinate growing Mold isolated. Aspergillus positive, 4,68. ID following, currently on triple antifungal coverage. Ophthalmology evaluated on 8/19. Show small exudate on left OS and tiny focus on left macula, will reevaluate on 8/21. WBC transfusion–pending. Plan for bone marrow under sedation on 8/22. FC allogenic CAR-T added. PT/OT consult.

***Figure 1 – Excerpts from Mohamad Gafoor's MD Anderson Medical Records***

~ I had a detailed discussion with patient's son this morning in patient's room
~ He is made aware of the MRI brain scan findings and patient's current clinical status which include worsening mental status, respiratory failure requiring mechanical vent support, septic shock/hypotension requiring vasopressors, worsening renal failure with oliguria despite maximum dose of intravenous furosemide infusion, persistent pancytopenia, worsening bacterial/fungal sinusitis [based on MRI scan report], liver disorder
~ I stated that based on today's assessment patient is not a candidate for transfer out of hospital to Florida his hometown [as patient's son was considering this option yesterday and I had to discuss with an outside hospital ICU physician]
~ I discussed about CODE STATUS and recommended to not resuscitate status
~ I also discussed about transitioning patient from aggressive ICU care to palliative/hospice care in the ICU [ICU end-of-life care], for the patient to pass away peacefully and as naturally as possible.

***Figure 2 – Excerpt from Mohamad Gafoor's MD Anderson Medical Records***



***Figure 3***

**CERTIFIER INFORMATION**
TYPE OF CERTIFIER: CERTIFYING PHYSICIAN          MEDICAL EXAMINER CASE NUMBER:  NOT APPLICABLE
TIME OF DEATH (24 HOUR):     1836                          DATE CERTIFIED: JANUARY 31, 2025
CERTIFIER'S NAME:  ERIC ALAN MOORE
CERTIFIER'S LICENSE NUMBER: ME63176
NAME OF ATTENDING PRACTITIONER (IF OTHER THAN CERTIFIER): NOT APPLICABLE
**CAUSE OF DEATH AND INJURY INFORMATION**
MANNER OF DEATH:  NATURAL
CAUSE OF DEATH - PART I -  AND APPROXIMATE INTERVAL: ONSET TO DEATH
a. LYMPHOMA                                                                                                       MONTHS

b. FUNGAL INFECTION

*Figure 3 – Excerpt from Mohamad Gafoor's Amended Certification of Death*

1.2     Pursuant to Texas Civil Practice & Remedies Code §§ 71.002, 71.004, and 71.021, Plaintiff Bebi Gafoor, the surviving spouse of Mohamad Mustafa Gafoor and Personal Representative of his Estate, brings a wrongful death action and survival action against Defendants. Pursuant to Texas Business & Commerce Code § 17.50, Plaintiff Bebi Gafoor also brings claims under the Texas Deceptive Trade Practices Act ("**DTPA**") as Personal Representative of the Estate of Mohamad Mustafa Gafoor.

1.3     Pursuant to Texas Civil Practice & Remedies Code §§ 71.002 and 71.004, Plaintiff Imtiaz Gafoor, the adult son of the late Mohamad Mustafa Gafoor, brings a wrongful death action against Defendants. Pursuant to Texas Business & Commerce Code § 17.50, Plaintiff Imtiaz Gafoor also brings a claim under the DTPA.

1.4     Lastly, Plaintiff Bebi Gafoor, both Individually and as Personal Representative of the Estate of Mohamad Mustafa Gafoor, and Plaintiff Imtiaz Gafoor bring gross negligence claims against Defendant Samantha Patel.

**II.**
**PARTIES, STANDING, & SERVICE OF PROCESS**

2.1     Plaintiff **BEBI GAFOOR** is a resident of Orlando, Orange County, Florida. Bebi Gafoor brings a premises liability–wrongful death action against Defendants as the surviving spouse of Mohamad Mustafa Gafoor. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 71.002;

71.004(a). Moreover, on behalf of the Estate of Mohamad Mustafa Gafoor, Plaintiff Bebi Gafoor brings a premises liability–survival claim against Defendants and a DTPA–survival claim against Defendant Samantha Patel and the Airbnb Defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.021(b); TEX. BUS. & COM. CODE ANN. § 17.50.

     2.2    On September 11, 2025, Bebi Gafoor was named administrator of the Estate of Mohamad Mustafa Gafoor (hereinafter "**the Estate**") by the Ninth Judicial Circuit Court of Florida pursuant to an order of summary administration. Thus, Bebi Gafoor has the requisite capacity to bring survival claims against Defendants on behalf of the Estate. *See* TEX. EST. CODE § 22.031(a) (the personal representative of an estate includes the administrator); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005) ("In general, only the estate's personal representative has the capacity to bring a survival claim.").

     2.3    Plaintiff **IMTIAZ GAFOOR** is a resident of Coral Springs, Broward County, Florida. Imtiaz Gafoor brings a premises liability–wrongful death action against Defendants as the adult son of Mohamad Mustafa Gafoor. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(a). Moreover, Plaintiff Imtiaz Gafoor brings a DTPA claim against Defendant Samantha Patel and the Airbnb Defendants. *See* TEX. BUS. & COM. CODE ANN. § 17.50.

     2.4    Defendant **AIRBNB, INC.** is a foreign, for–profit corporation created and existing under the laws of the State of Delaware. Airbnb, Inc.'s principal office is located in San Francisco, California. Airbnb, Inc. may be served with process through the **Texas Secretary of State** at **1019 Brazos Street, Austin, Texas 78701**. This method of service is proper because this Defendant engages in business in Texas, does not maintain a regular place of business in Texas, does not have a designated agent for service of process in Texas, and this lawsuit arises from this Defendant's business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.044(b).

2.5     Defendant **AIRBNB RPG, INC**. is a foreign for–profit corporation created and existing under the laws of the State of Delaware. Airbnb RPG, Inc.'s principal office is located in San Francisco, California. Airbnb RPG, Inc. may be served with process through the **Texas Secretary of State** at **1019 Brazos Street, Austin, Texas 78701**. This method of service is proper because this Defendant engages in business in Texas, does not maintain a regular place of business in Texas, does not have a designated agent for service of process in Texas, and this lawsuit arises from this Defendant's business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.044(b).

2.6     Defendant **AIRBNB PAYMENTS, INC**. is a foreign, for–profit corporation created and existing under the laws of the State of Delaware. Airbnb Payments, Inc.'s principal office is located in San Francisco, California. Airbnb Payments, Inc. may be served with process through its registered agent in Texas, **Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company**, at **211 E. 7th Street, Suite 620, Austin, TX 78701**.

2.7     Defendants AIRBNB, INC.; AIRBNB RPG, INC.; and AIRBNB PAYMENTS, INC. are collectively referred to herein as "**Airbnb**" or the "**Airbnb Defendants**."

2.8     Defendant **SAMANTHA PATEL**, the Unit's Airbnb host during the Gafoor's stay, is an individual residing and domiciled in Harris County, Texas. Upon information and belief, Samantha Patel may be served with process at her usual place of abode, **9306 Bevlyn Dr., Houston, TX 77025**, or her usual place of business, **1711 Old Spanish Trail, Apt. No. 203; Houston, TX 77054** (*i.e.,* the Subject Unit), or wherever she may be found.

2.9     Defendant **GEETHA MURICKAN**, a joint owner of the Unit during the Gafoor's stay, is an individual residing and domiciled in Fort Bend County, Texas. Upon information and belief, Geetha Murickan may be served with process at her usual place of abode, **33 Sunset Park**

**Ln., Sugar Land, TX 77498**, or wherever she may be found.

2.10    Defendant **FELIX THOMAS**, a joint owner of the Unit during the Gafoor's stay, is an individual residing and domiciled in Fort Bend County, Texas. Upon information and belief, Felix Thomas may be served with process at his usual place of abode, **33 Sunset Park Ln., Sugar Land, TX 77498**, or wherever he may be found.

## III.
## DISCOVERY LEVEL, JURISDICTION, & VENUE

3.1    In compliance with Texas Rule of Civil Procedure 190, Plaintiffs intend that discovery be conducted pursuant to Level 3.

3.2    The Court has original jurisdiction over Defendants because all relief sought herein, monetary relief over $1,000,000, is within the jurisdictional limits of this Court. *See* Tex. R. Civ. P. 47(c)(4). Jurisdiction is proper in this Court because Plaintiffs are entitled to damages in excess of the minimum jurisdictional limits of this Court. *Id.* The Court has personal jurisdiction over all Defendants because all Defendants are (a) domiciled in Texas, and/or (b) have sufficient minimum contacts with Texas such that the exercise of jurisdiction by Texas courts would not be unfair or violate constitutional due process.

3.3    Venue is proper in Harris County, Texas as the Gafoor's stay at the Subject Unit, Mohamad Mustafa Gafoor's exposure to toxic mold in the Unit, and Mohamad Mustafa Gafoor's resulting severe injuries and medical treatment all took place in Harris County, Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §15.002(a)(1). Further, upon information and belief, Defendant Samantha Patel resides in Harris County, Texas and did so at the time of the events made the basis of this lawsuit. *Id.* at §15.002(a)(2). Because Plaintiffs' claims against Defendants all arise from the same transaction, occurrence, or series of transactions or occurrences, proper venue as to one Defendant in this action is sufficient venue as to all Defendants. *Id.* at §15.005.

3.4    Defendants Samantha Patel, Geetha Murickan, and Felix Thomas are natural persons who reside in, are domiciled in, and are citizens of the State of Texas. Therefore, Samantha Patel, Geetha Murickan, and Felix Thomas are forum defendants under 28 U.S.C. §1441(b)(2) and this civil action cannot be lawfully removed to a United States district court.

## IV.
## FACTUAL BACKGROUND

**A.    Booking of the Unit  & Mr. Gafoor's Chemotherapy.**

4.1    Starting on or around July 19, 2024, Mohamad Mustafa Gafoor ("**Mr. Gafoor**") was scheduled to receive chemotherapy treatment at MD Anderson to treat Acute Lymphoblastic Leukemia ("ALL"). As Florida residents, the Gafoor's needed a safe and comfortable place to stay near the Houston medical center while Mr. Gafoor underwent cancer treatment. Thus, in July 2024, Plaintiff Imtiaz Gafoor researched extended rentals on Airbnb. He found a listing posted by the Unit's host, Defendant Samantha Patel, pictured in Figure 4 below. Attracted to and relying on the representations that the Unit was a "luxury," a "comfort," "cozy," and "warm," Imtiaz sent a reservation request for himself, his mother (Plaintiff Bebi Gafoor), and his immunocompromised father. The reservation was accepted by Ms. Patel and the Gafoor's extended rental at the Unit began on July 26, 2024. *See infra* Figure 4 and Figure 5.

**B.    The Gafoor's Summer 2024 Stay at the Unit.**

4.2    On July 25th, Plaintiff Bebi Gafoor moved into the Unit. Bebi stayed at the unit consistently between July 25th to September 15th. Imtiaz Gafoor stayed at the Unit consistently between August 3rd to September 15th.

4.3    From July 19th to August 8th, Mohamad Gafoor stayed at MD Anderson where he received treatments like lymphodepletion chemotherapy, Tecartus/CAR-T immunotherapy, and cell infusion to treat his ALL. In turn, Mr. Gafoor was very weak and severely

immunocompromised. On August 8th, Mr. Gafoor moved into the Unit and slept in the master bedroom with his wife Bebi. Mr. Gafoor slept in the Unit from <u>August 8th–16th, 2024.</u>



*Figure 4 – Excerpt from the Unit's Airbnb Listing*



*Figure 5 – Excerpt from Imtiaz Gafoor's Airbnb Receipt*

**C.   Mohamad Gafoor's Mold–Induced Fungal Infection and Resulting Tragic Death.**

4.4    On August 12, 2024, Mr. Gafoor presented to MD Anderson with complaints of a headache and eye pain. On August 16th, Mr. Gafoor presented again to MD Anderson with complaints of a worsening headache and eye pain. An MRI revealed that Mr. Gafoor was suffering from **<u>invasive fungal sinusitis</u>**. *See supra* Figures 1–2. Mr. Gafoor was then admitted to MD

Anderson on August 16th for further management of his fungal sinusitis. On August 20th, MD Anderson confirmed via a tissue culture test that **aspergillus mold** was the source of Mr. Gafoor's fungal infection. *See id.*

4.5      On September 4th, Mr. Gafoor's health took a tragic turn for the worse as he was found nonresponsive and experienced a Code Blue. Specifically, Mr. Gafoor experienced cardiac arrest and was intubated. By September 11th, Mr. Gafoor was experiencing ongoing encephalopathy with altered mental status, fungal invasive infection, bacterial infection, pancytopenia, and difficulty with secretion clearance due to altered mental status. By September 14th, Mr. Gafoor's condition reached critically ill status as he had experienced a significant decline. Mr. Gafoor's decline included "worsening bacterial/fungal sinusitis." *See supra* Figure 2. On September 15th, Mr. Gafoor's treating physicians advised Imtiaz that, because of his father's worsening condition, Mr. Gafoor should "pass away peacefully." *Id.* After much consideration, Imtiaz signed a Do–Not–Resuscitate ("DNR") for his father that same day.

4.6      On or around September 15th, Mr. Gafoor was transferred from Houston back to his home in Orlando, Florida to pass away peacefully at a hospice care facility. Mr. Gafoor died on September 18, 2024. On the Amended Certification of Death, Dr. Eric Alan Moore lists "Lymphoma" *and* "Fungal Infection" as causes of Mr. Gafoor's death. *See supra* Figure 3.

**D.    The Gafoor's Mold Suspicions and March 2025 Mold Inspection at the Unit.**

4.7      Around December 2024, Bebi Gafoor informed her son, Imtiaz Gafoor, that the source of the fungal infection may have come from mold in the Unit. More specifically, Bebi told Imtiaz that the air conditioning in the master bedroom made her husband feel sick. For this reason, Mr. Gafoor would often switch sides of the bed at night to be further away from the AC vent.

4.8      In March 2025, Imtiaz arranged for a mold assessment to be conducted at the Unit

by Kyle Reist – a BioTex mold assessment consultant. Mr. Reist discovered Aspergillus and other toxic molds in the Unit during his March 31st inspection. Significantly, air quality tests revealed <u>elevated counts of Aspergillus in the master bedroom where Mr. Gafoor slept</u>. Mr. Reist also concluded as follows regarding the length of time the Aspergillus mold was present in the Unit:

The vent in the master bedroom, which showed the highest counts of *Aspergillus/Penicillium*, blows directly onto the bed located in the middle of the room where Mr. Gafoor slept. Based on the scope of magnitude of the mold it is my opinion the mold in the HVAC plenum and boot boxes was present when Mr. Gafoor was staying in the residence in August of 2024 from the 8th through the 16th.

Thus, the Bio Tex Mold Assessment Report reveals that the exact type of mold MD Anderson found in their tissue culture testing (Aspergillus) was both present *and* blowing directly onto Mr. Gafoor during the time he stayed at *and* slept in the Unit. *See* Figures 6–8.



**An air quality test was conducted in the master bedroom which tested positive for elevated counts of Aspergillus/Penicillium.**

*Figure 6 – Excerpt from the March 31, 2025 BioTex Mold Assessment Report*

A construction defect in the HVAC system is creating extremely elevated moisture content/condensation within the air conditioner which has resulted in mold growth in the HVAC plenum, boot boxes and other areas within the HVAC and has resulted in elevated counts of *Aspergillus/Penicillium* and *Cladosporium*. The vent in the master bedroom, which showed the highest counts of *Aspergillus/Penicillium*, blows directly onto the bed located in the middle of the room where Mr. Gafoor slept. Based on the scope and magnitude of the mold it is my opinion the mold in the HVAC plenum and boot boxes was present when Mr. Gafoor was staying in the residence in August of 2024 from the 8th through the 16th.

Upholstered and porous items such as mattresses, upholstered chairs suits, etc. in the master bedroom which were exposed to the mold cannot be salvaged safely without effectively destroying them during the cleaning process therefore these items which have been cross contaminated by the HVAC system may need to be discarded.

*Chaetomium* was also identified in the living room air quality test which is potentially a toxic mold depending on the species.

Biotex Inspections recommends that a licensed Mold Remediation Contractor be retained for the removal of the impacted materials. Additionally, a Mold Assessment Consultant should be retained to prepare the appropriate mold protocol and conduct final air clearance testing upon completion of the remediation. However, all sources of water intrusion, water damage, humidity, and/or moisture content, including but not limited to any built-in mechanical systems, water systems and/or structural elements, should be properly repaired before beginning the remediation to help prevent the re-occurrence of damage and mold growth. The Residence's maintenance records and reports may help reveal additional sources of water intrusion that may have impacted this Residence and/or surrounding properties, which may have contributed or may be contributing to the mold identified within this report.

*Figure 7 – Excerpt from the March 31, 2025 BioTex Mold Assessment Report*



Mold growth was observed by the borescope camera inside of the HVAC plenum at the time of the mold assessment.



No filter was in place in the HVAC during the assessment and mold growth and sitting water was observed where the filter should be.

*Figure 8 – Excerpt from the March 31, 2025 BioTex Mold Assessment Report*

### E.  The Non–Airbnb Defendants.

4.9     At all times material to this lawsuit, Defendants GEETHA MURICKAN and FELIX THOMAS were joint owners of the Subject Unit. Moreover, at all times material to this lawsuit, Defendant SAMANTHA PATEL was the host of the Subject Unit on the Airbnb platform. Therefore, pursuant to Airbnb's ground rules, Ms. Patel managed the Subject Unit as she was responsible for guest bookings and ensuring that the Unit was "free of health hazards (**mold**, pests, etc.)." AIRBNB, *Ground rules for home hosts,*  https://www.airbnb.com/help/article/2895 (last visited on November 25, 2025) (emphasis added).

## V.
## DEFENDANTS' CONTROL OF THE SUBJECT UNIT & *RESPONDEAT SUPERIOR*

5.1     Under Texas premises liability law, property owners like Defendants Geetha Murickan and Felix Thomas have a general duty to keep their premises in a safe condition and may be held liable for injuries resulting from their failure to remedy unreasonably dangerous conditions. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 464, 473 (Tex. 2017); *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 776 (Tex. 2010). Non–owners may be subject to the same liability if they have a right to control the premises, which "may be expressed by contract or implied by conduct." *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008).[1]

5.2     Defendants AIRBNB, INC.; AIRBNB RPG, INC.; and AIRBNB PAYMENTS, INC. (collectively "**Airbnb**" or the "**Airbnb Defendants**") had the right to control the Unit at all times material to this lawsuit and may be held liable for Plaintiffs' injuries/damages under Texas premises liability law. *See United Scaffolding, Inc.,* 537 S.W.3d at 467, 479. To list a property on

---

[1]For example, in *United Scaffolding,* a non–owning contractor was required to inspect the scaffolding at issue in a construction fall case. *United Scaffolding, Inc.,* 537 S.W.3d at 467, 479. For this reason, the Texas Supreme Court held that the contractor had the right to control the scaffolds and the injured worker's lawsuit against the contractor should have been brought as a premises liability claim. *Id.*

the Airbnb platform, hosts such as Samantha Patel must ensure that the property is free from health hazards—**including mold**. *See* Figures 9–10. Hosts must also "provide their guests with the ability to readily access the listing at check-in (ex: correct directions, updated keycode, etc.) and throughout their stay." *See* https://www.airbnb.com/help/article/2895.



Community policy

# Ground rules for home hosts

To help create comfortable, reliable stays for guests, we require hosts to follow our rules regarding:

- Listing accuracy
- Honoring reservations and refunds
- Timely communication
- Listing cleanliness

*Figure 9 – Excerpt from Airbnb's Host Ground Rules*



Listing cleanliness

All listings should be clean and free of health hazards before guest check-in.

- **Health and safety:** Listings should be free of health hazards (mold, pests, etc.).
- **Cleanliness:** Hosts should provide listings that meet a high standard of cleanliness (free of extensive dust, pet dander, dirty dishes, etc.).
- **Guest turnover:** Hosts should be sure to clean between every stay (do laundry, take out trash, vacuum/sweep, wipe down surfaces, etc.).

*Figure 10 – Excerpt from Airbnb's Host Ground Rules*

5.3    In exchange for using the Airbnb platform to list a transient rental property like the Unit, Airbnb retains the ongoing right to control property maintenance and guest access to the property. For instance, if a host violates *any* of Airbnb's ground rules, Airbnb can take action such as canceling upcoming or active property reservations and requiring hosts to address issues (*e.g.,* health hazards) on the property. *See* https://www.airbnb.com/help/article/2895; Figure 11.

## Enforcing these ground rules

We are committed to enforcing these ground rules. When a ground rule violation is reported, Airbnb will attempt to contact the host to understand what occurred.

Actions we take may include educating hosts about this policy, issuing warnings, and requiring hosts to remove content that misrepresents the listing or misleads guests. When repeated or severe violations of these ground rules are reported, hosts or their listings may be **suspended or removed** from the platform, hosts may be prevented from publishing new listings or lose their Superhost status, co-hosts may be prevented from participating in the Co-host Network or co-hosting at new listings, and the timing of **host and co-host payouts** may be adjusted.

Depending on the nature of the violation, Airbnb may also take other actions, such as canceling an upcoming or active reservation, **refunding a guest** from a host's payout, and/or requiring hosts to provide proof that they have addressed issues before they can resume hosting.

In addition, a host who cancels a confirmed reservation, or is found to be responsible for a cancellation, may face other consequences under our **Host Cancellation Policy**. Airbnb may waive cancellation fees and, in some cases, other consequences if the host cancels because of certain **valid reasons** beyond the host's control.

*Figure 11 – Excerpts from Airbnb's Host Ground Rules*

5.4     As the Airbnb host, Defendant SAMANTHA PATEL also had the right to control the Subject Unit. Namely, Ms. Patel had the right to allow guests like the Gafoor family to enter the Unit, stay in the Unit, and Ms. Patel was responsible for maintaining the Unit during the Gafoor's stay. *See* https://www.airbnb.com/help/article/2895. Thus, like the Airbnb Defendants, Ms. Patel may be held liable for Plaintiffs' injuries/damages under Texas premises liability law.

5.5     Finally, at all times material to this lawsuit, the Airbnb Defendants had the right to control the progress, details, and methods of Defendant Samantha Patel's listing of the Subject Unit on the Airbnb platform to guests like the Gafoor family and her work as the Unit's host. *See Limestone Products Distribution, Inc. v. Mc-Namara*, 71 S.W.3d 308 (Tex. 2002) ("The test to determine whether a worker is an employee rather than an independent contractor is whether the

employer has the right to control the progress, details, and methods of operations of the work."). Additionally, at all times material to this lawsuit, Ms. Patel was an Airbnb employee (1) acting within the general authority granted to her by Airbnb; (2) in furtherance of Airbnb's business; and (3) for the accomplishment of the object for which she was hired. *See Knight v. City Streets, L.L.C.,* 167 S.W.3d 580, 583 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Accordingly, under the legal doctrine of *respondeat superior,* the Airbnb Defendants are vicariously liable for Plaintiffs' injuries/damages resulting from Ms. Patel's failure to keep the Unit in safe condition during the Gafoor's stay *and* Ms. Patel's DTPA violations. *See generally Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 305 (Tex.1988) (*respondeat superior* is a valid basis for creating vicarious liability under the DTPA).

## VI.
## CAUSES OF ACTION

**A.    Premises Liability—Wrongful Death and Premises Liability–Survival Claims Brought by Plaintiffs against all Defendants.**

6.1    Plaintiff BEBI GAFOOR brings a premises liability–wrongful death action against Defendants as the surviving spouse of Mohamad Mustafa Gafoor. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 71.002; 71.004(a). Plaintiff Bebi Gafoor also brings a premises liability–survival claim against Defendants on behalf of the Estate of Mohamad Mustafa Gafoor. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.021(b). Plaintiff IMTIAZ GAFOOR brings a premises liability–wrongful death action against Defendants as the adult son of Mohamad Mustafa Gafoor. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 71.002; 71.004(a).

6.2    As seen in Figures 12–15 below, for immunocompromised cancer patients like Mr. Gafoor, the presence of any mold/fungi is a ***life–threatening*** dangerous condition due to their unique susceptibility to invasive fungal infections. The presence of aspergillus mold is especially deadly as it is the most common cause of acute invasive fungal sinusitis ("AIFS"). *Compare* Grace

M. Wandell et al., *A multi-institutional review of outcomes in biopsy-proven acute invasive fungal sinusitis*, 8 INTERNATIONAL FORUM OF ALLERGY & RHINOLOGY, 1459, 1461 (2018) (in a study of patients with hematologic malignancies like Mr. Gafoor diagnosed with AIFS, aspergillus was responsible for **47%** of cases); *with id.* (in the same study, mucor/rhizopus was responsible for 15% of AIFS cases, multiple organisms were responsible for 3%, atypical organisms were responsible for 16%, and no mold/fungi was isolated for the remaining 19% of patients).

6.3     Under Texas law, when an immunocompromised person like Mr. Gafoor is more susceptible to a specific injury than the general population, the unique susceptibility to injury does not alleviate a defendant from liability. *See, e.g., Singh v. Payan*, No. 04-17-00111-CV, 2018 WL 4096402, at *5 (Tex. App.—San Antonio Aug. 29, 2018, no pet.) ("An eggshell plaintiff instruction addresses the situation where a plaintiff's pre-existing condition makes her 'more susceptible' to the injury."). Thus, the presence of toxic molds (including Aspergillus) in the Unit during the Gafoor's stay posed an unreasonable risk of harm. Defendants knew or reasonably should have known the danger of harm when an immunocompromised person like Mr. Gafoor is exposed to toxic molds. And Defendants failed to exercise ordinary care to protect Mohamad Gafoor from the danger of toxic mold exposure by both failing to adequately warn him of the condition and failing to make the condition reasonably safe (*e.g.*, a mold inspection and subsequent remediation).

6.4     Moreover, because Mr. Gafoor's exposure to Aspergillus mold in the Subject Unit was **A** proximate cause of his death and pre–death survival injuries, Defendants are liable for Mr. Gafoor's wrongful death and the Estate's survival damages under Texas premises liability law. *See Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001) ("More than one act may be the proximate cause of the same injury."); Comm. on Pattern Jury Charges, State Bar of Tex., *Texas*

*Pattern Jury Charges: Malpractice, Premises & Products* PJC 66.4 (2024) (elements of a premises liability claim when the plaintiff is an invitee).

Acute invasive fungal sinusitis (AIFS) is a rare infection that typically occurs in immunocompromised patients when fungi, usually *Aspergillus* or *Mucor*,[3–4] invade the mucosa of the paranasal sinuses and destroy adjacent structures through angioinvasion.[5] Its mortality is high even with timely diagnosis and treatment: ~50% in the largest meta-analysis to date.[6] Risk factors for AIFS are related to functional and quantitative neutropenia, such as in cases of uncontrolled diabetes mellitus, hematologic malignancy (especially acute myeloid leukemia),[4,7] chemotherapy,[1] corticosteroid use, renal/liver failure,[8] bone marrow transplantation (BMT),[8,9] HIV/AIDS,[10] or autoimmune disease.[6,7,1]

***Figure 12 – Excerpts from the International Forum of Allergy & Rhinology***
(Page 1459)

|  | All patients[a] | | Hematologic malignancy | |
|---|---|---|---|---|
|  | Mean or % | N or range | Mean or % | N or range |
| Organism |  |  |  |  |
| *Aspergillus* | 48% | 46 | 47% | 29 |
| *Mucor/Rhizopus* | 20% | 19 | 15% | 9 |
| Multiple organisms | 4% | 4 | 3% | 2 |
| Atypical organisms[d] | 12% | 11 | 16% | 10 |
| None isolated | 16% | 15 | 19% | 12 |

***Figure 13 – Excerpt from the International Forum of Allergy & Rhinology***
(Page 1461—Table 1)

> In a multivariate Cox regression, adjusting for chemotherapy and immune stimulator use, patients with hematologic malignancy had a 3.3-fold increased risk of death at 3 months from diagnosis (95% confidence interval [CI], 1.1-9.8; $p = 0.02$; Table 3, Model A).

*Figure 14 – Excerpt from the International Forum of Allergy & Rhinology*
(Page 1462).

> Infection can be transmitted by the inhalation of spores (aspergillosis, cryptococcosis, histoplasmosis), percutaneous inoculation in cutaneous and subcutaneous infections (dermatophytosis, madura foot), penetration into the mucosa by commensal organisms such as *Candida albicans*, and the ingestion of a toxin in contaminated food or drink (gastrointestinal disease).

> In immunocompromised patients, any fungus present in the environment may be potentially pathogenic. *Aspergillus* and *Candida* spp. are the main organisms isolated most frequently from immunocompromised patients.

*Figure 15 – Excerpts from the Indian Journal of Medical Research*[2]

**B.    DTPA Claims Brought Against Defendant Samantha Patel and the Airbnb Defendants.**

6.5    Pursuant to Texas Business & Commerce Code § 17.50, Plaintiff Bebi Gafoor brings claims under the Texas Deceptive Trade Practices Act ("DTPA") as Personal Representative

---

[2]Parisa Badiee & Zahra Hashemizadeh, *Opportunistic invasive fungal infections: diagnosis & clinical management*, 139 INDIAN J. OF MEDICAL RESEARCH, 195, 196 (Feb. 2014).

of the Estate of Mohamad Mustafa Gafoor against Defendant Samantha Patel and the Airbnb Defendants. Plaintiff Imtiaz Gafoor also brings DTPA claims against Ms. Patel and the Airbnb Defendants under Texas Business & Commerce Code § 17.50.

6.6    The DTPA prohibits "false, misleading, or deceptive acts or practices [including]…representing that goods and services have…characteristics, ingredients, uses, [or] benefits…which they do not have" and "representing that goods or services are of a particular standard, quality, or grade…if they are of another." *Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 822 (Tex. App.—Dallas 2003, pet. denied) (quoting TEX. BUS. & COM. CODE ANN. § 17.46(b)(5) & (7)). Here, the misrepresentations at issue concern the quality of the Unit (*i.e.,* it was a "luxury," a "comfort," "cozy," and "warm") when the Unit in fact contained toxic mold. There is nothing comfortable or cozy about mold. As discussed herein, for immunocompromised persons like Mr. Gafoor, the presence of mold/fungi is ***life–threatening****. See supra* Figures 12–15.

6.7    The misrepresentations about the Unit made by Defendant Samantha Patel were committed ***knowingly*** and made to and relied on by Plaintiff Imtiaz Gafoor and the late Mohamad Gafoor to their detriment. Because they all stayed at the Unit, the Gafoor's are all "consumers" and have standing to bring DTPA claims against Defendant Samantha Patel and the Airbnb Defendants – who are liable to Plaintiffs via *respondeat superior. See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 815 (Tex. 1997) ("the DTPA does not require the consumer to be an actual purchaser or lessor of the goods or services, as long as the consumer is the beneficiary of those goods or services.").

6.8    The DTPA also applies to the beach of an implied warranty. TEX. BUS. & COM. CODE ANN. § 17.50(a)(2). Under Texas law, in the "rental of a dwelling unit, whether for a specified time or at will, there is an implied warranty of habitability by the landlord that the

apartment is habitable and fit for living." *Kamarath v. Bennett,* 568 S.W.2d 658, 659 (Tex. 1978). This duty has been abrogated (*i.e.,* repealed) by a landlord's statutory duty to repair outlined in the Texas Property Code. *See Philadelphia Indem. Ins. Co. v. White,* 490 S.W.3d 468, 479 (Tex. 2016). However, the Gafoor's stay in the Unit was not covered by the Texas Property Code. *See* TEX. PROP. CODE ANN. § 92.152 (the chapter does not apply to transient housing). Therefore, the implied warranty of habitability outlined in *Kamarath* applies to the Gafoor's stay at the Unit.

6.9     The presence of toxic mold/fungi (*e.g.,* Aspergillus) in the Unit rendered it unfit for living – especially for immunocompromised patients like Mr. Gafoor. In turn, Defendant Samantha Patel (the Airbnb host) and the Airbnb Defendants (via *respondeat superior*) may all be held liable under DTPA for breaching the implied warranty of habitability.

6.10     Pursuant to Texas Business & Commerce Code § 17.505, Plaintiffs' provided written notice of the DTPA claims set forth herein prior to filing suit. Upon information and belief, Plaintiffs' DTPA notice letter (dated May 1, 2025) was delivered to the Unit on May 5, 2025.[3]

## C.     Gross Negligence Claims Brought Against Defendant Samantha Patel.

6.11     Plaintiff Bebi Gafoor, both Individually and as Personal Representative of the Estate of Mohamad Mustafa Gafoor, and Plaintiff Imtiaz Gafoor all bring gross negligence claims against Defendant Samantha Patel.

6.12     As seen in Figure 16 below, prior to the Gafoor's stay in the Unit, Defendant Samantha Patel had actual awareness that Mr. Gafoor was an MD Anderson patient. Thus, the acts and omissions that resulted in the presence of Aspergillus and other toxic molds in the Unit, when viewed objectively from Ms. Patel's standpoint at the time of the Gafoor's stay in the Unit, involved an extreme degree of risk. Specifically, the extreme risk that immunocompromised guests

---

[3]*See* FedEx Tracking ID 880953371833.

like Mr. Gafoor, who are receiving cancer treatment at nearby MD Anderson while staying in the Unit, will suffer severe injuries or death due to their exposure to toxic mold. At the time of the Gafoor's stay in the Unit, Ms. Patel had actual, subjective awareness of this extreme risk but nonetheless proceeded with conscious indifference to the rights, safety, or welfare of immunocompromised guests like Mr. Gafoor. *See* Figure 16.  Because these acts and omissions constitute gross negligence, Plaintiffs may recover exemplary damages from Ms. Patel. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001(11); 41.003(a)(3).



*Figure 16 – Correspondence Between Plaintiff Imtiaz Gafoor and Defendant Samantha Patel*

# VII.
## DAMAGES

**A.    Plaintiff Bebi Gafoor—Wrongful Death, Survival, DTPA, and Exemplary Damages**

7.1    Plaintiff Bebi Gafoor would show that, as a direct and proximate result of the death of Mohamad Mustafa Gafoor, she sustained the following wrongful death damages that are recoverable from <u>Defendants</u> – who may be held jointly and severally liable.[4]

    a.    Loss of companionship and society sustained in the past.

    b.    Loss of companionship and society that, in reasonable probability, will be sustained in the future.

    c.    Mental anguish sustained in the past.

    d.    Mental anguish that, in reasonable probability, will be sustained in the future.

7.2    Plaintiff Bebi Gafoor, acting as Personal Representative of the Estate, would show that, as a direct and proximate result of the acts and omissions described herein, the Estate of Mohamad Mustafa Gafoor sustained the following survival damages that are recoverable from <u>Defendants</u>   – who may be held jointly and severally liable:

    a.    Conscious physical pain in the past experienced by Mohamad Mustafa Gafoor before his death.

    b.    Mental anguish in the past experienced by Mohamad Mustafa Gafoor before his death.

    c.    Medical expenses in the past.

    d.    Funeral and burial expenses.

7.3    Plaintiff Bebi Gafoor, acting as Personal Representative of the Estate, would show that, as a direct and proximate result of the deceptive acts and omissions described herein, the

---

[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.013.

Estate of Mohamad Mustafa Gafoor sustained the following DTPA damages that are recoverable from <u>Defendant Samantha Patel</u> and the <u>Airbnb Defendants</u> – who may be held jointly and severally liable:

    a. A reasonable fee for the necessary services of Plaintiffs' attorneys in this case for:

- Representation in the trial court;
- Representation through appeal to the court of appeals;
- Representation at the petition for review stage in the Supreme Court of Texas; and
- Representation at the merits briefing stage in the Supreme Court of Texas and for representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

    b. Medical care in the past and other economic damages in the past.

    c. Mental anguish sustained in the past.

7.4 Plaintiff Bebi Gafoor, acting both individually and as Personal Representative of the Estate, would show that, as a direct and proximate result of the grossly negligent acts and omissions described in Section VI–C herein, she **and** the Estate of Mohamad Mustafa Gafoor are entitled to recover exemplary damages from <u>Defendant Samantha Patel.</u>

**B.     Plaintiff Imtiaz Gafoor—Wrongful Death, DTPA, and Exemplary Damages.**

7.5 Plaintiff Imtiaz Gafoor would show that, as a direct and proximate result of the death of Mohamad Mustafa Gafoor, he sustained the following wrongful death damages that are recoverable from <u>Defendants</u> – who may be held jointly and severally liable:[5]

    a. Loss of companionship and society sustained in the past.

    b. Loss of companionship and society that, in reasonable probability, will be sustained in the future.

    c. Mental anguish sustained in the past.

---

[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.013.

    d.  Mental anguish that, in reasonable probability, will be sustained in the future.

7.6     Plaintiff Imtiaz Gafoor would show that, as a direct and proximate result of the deceptive acts and omissions described herein, he sustained the following DTPA damages that are recoverable from <u>Defendant Samantha Patel</u> and the <u>Airbnb Defendants</u> – who may be held jointly and severally liable:

    a.  A reasonable fee for the necessary services of Plaintiffs' attorneys in this case for:

    - Representation in the trial court;
    - Representation through appeal to the court of appeals;
    - Representation at the petition for review stage in the Supreme Court of Texas; and
    - Representation at the merits briefing stage in the Supreme Court of Texas and for representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

    b.  Economic damages sustained in the past.

    c.  Mental anguish sustained in the past.

    d.  Mental anguish that, in reasonable probability, will be sustained in the future.

7.7     Plaintiff Imtiaz Gafoor would show that, as a direct and proximate result of the grossly negligent acts and omissions described in Section VI–C herein, he is entitled to recover exemplary damages from <u>Defendant Samantha Patel.</u>

7.8     Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiffs seek monetary relief in excess of one million dollars ($1,000,000).

## VIII.
## <u>TRCP 193.7 AUTHENTICATION NOTICE</u>

8.1     Plaintiffs specifically give all parties notice that, pursuant to Texas Rule of Civil Procedure 193.7, that Plaintiffs intend to use all documents produced by Defendants in any pre–trial proceeding and at the trial of this cause.

## IX
## JURY TRIAL DEMAND & PRAYER FOR RELIEF

9.1    Plaintiffs demand a jury trial and have tendered the appropriate fee. **JURY TRIAL**

**DEMANDED.**

9.2    WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that this

cause be set before a jury and request that Defendants be cited to appear and answer and, that on

final hearing, Plaintiffs have and recover judgment for damages against Defendants, jointly and

severally, for:

a.  Actual damages in an amount within the jurisdictional limits of this Court;

b.  Exemplary damages as allowed by law against Defendant Samantha Patel;

c.  Pre–judgment interest at the maximum rate allowed by law;

d.  Post–judgment interest at the rate provided by law;

e.  Court costs;

f.  Reasonable and necessary attorney's fees as allowed by law; and

g.  Such other and further relief, at law or in equity, to which Plaintiffs may show
    themselves justly entitled.

Respectfully Submitted,

**THE CARLSON LAW FIRM, P.C.**

By:    *Philip Koelsch*
**Philip J. Koelsch**
559 S. Interstate Hwy 35, Ste. 250
Round Rock, TX 78664
(512)-671-7277
(512)-238-0275 – Fax
Texas Bar No.: 24110103
pkoelsch@carlsonattorneys.com

**AND**

**Paul W. Murphy**
Of Counsel – The Carlson Law Firm, P.C.
3803 W S Phillips Pkwy
College Station, Texas 77845
C: 979-575-4277
Texas Bar No.: 24027561
paul@murphylegal.com
pmurphy@carlsonattorneys.com

**AND**

**Kinsee L. Tumlinson**
100 E. Central Texas Expressway
Killeen, Texas 76541
(254)-526-5688
(254)-526-8204 – Fax
Texas Bar No.: 24137695
ktumlinson@carlsonattorneys.com

***ATTORNEYS FOR PLAINTIFFS***